## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

MARVIN ROBINSON                                 )
c/o Isaac Tom Monah                             )
20600 Chagrin Blvd., Ste 470                    )          **CASE NO:**
Shaker Heights, Ohio 44122                      )
                                                )
            Plaintiff,                          )
                                                )          **JUDGE:**
vs.                                             )
                                                )
CUYAHOGA COUNTY                                 )
2079 East 9th Street                            )
Cleveland, Ohio 44115                           )          **COMPLAINT**
                                                )
      and                                       )          **(Jury Demand Endorsed Herein)**
                                                )
ARMOND BUDISH                                   )
Cuyahoga County Executive                       )
c/o Department of Law                           )
2079 E. 9th Street                              )
Cleveland, Ohio                                 )
                                                )
In his Official Capacity as Cuyahoga County     )
Executive                                       )
                                                )
      and                                       )
                                                )
CUYAHOGA COUNTY SHERIFF'S                        )
OFFICE                                          )
1215 W. 3rd Street                              )
Cleveland, Ohio 44113                           )
                                                )
      and                                       )
                                                )
CHRISTOPHER PAUL VILAND                          )
Cuyahoga County Sheriff                          )
1215 W. 3rd Street                              )
Cleveland, Ohio 44113                           )
                                                )
                                                )

1

In his Official Capacity as Cuyahoga County )
Sheriff and Individually. )
)
JOHN DOES AND JANES DOES )
EMPLOYEES, AGENTS, AND/OR )
REPRESENTATIVES OF THE )
CUYAHOGA COUNTY SHERIFF'S )
OFFICE )
Names Not Presently Known )
1215 W. 3rd Street )
Cleveland, Ohio 44113 )
)
MICHELLE HENRY )
Cuyahoga County Corrections Center )
Warden )
1215 W. 3rd Street )
Cleveland, Ohio 44113 )
)
In Her Official Capacity as Warden of the )
Cuyahoga County Corrections Center and )
Individually )
)
     and )
)
THE METROHEALTH SYSTEM )
2500 MetroHealth Drive )
Cleveland, Ohio 44109 )
)
     and )
)
JOHN DOES AND JANES DOES )
EMPLOYEES, AGENTS, AND/OR )
REPRESENTATIVES OF THE )
METROHEALTH SYSTEM )
Names Not Presently Known )
2500 MetroHealth Drive )
Cleveland, Ohio 44019 )
)
          Defendants )
)
)
)

## I.    INTRODUCTION

1.  This Complaint is for violation Federal civil rights and for state actions, specifically the failure of Cuyahoga County officials and medical personnel contracted by Cuyahoga County officials to protect Plaintiff, to refrain from illegal incarceration of Plaintiff, and to provide safe and appropriate care and conditions during his incarceration, including adequate medical care for Plaintiff at the Cuyahoga County Corrections Center. (the "County Jail") and after his transfer to the Metrohealth Hospital ("Metrohealth").

2.  The Defendants were deliberately indifferent to the Plaintiff's serious medical needs while incarcerated at the County Jail causing the Plaintiff both serious and permanent harm in violation of Plaintiff's Constitutional rights.

3.   The conditions at the County Jail while Robinson was incarcerated, resulted in Mr. Robinson going into a coma for a week because of acute kidney failure, uremic encephalopathy, and the amputation of two of his fingers. The conditions Mr. Robinson experienced are consistent with the U.S. Marshal's documentation of inhumane conditions inside of the Cuyahoga County Corrections Center. See report, Exhibit A to Plaintiff's Complaint.

4.  Examining each Defendant's/fiduciary's moral commitment and practical ethical commitment and their breach thereof while employed by the County Jail, specifically to pre-trial detainees like Marvin Robinson, is an additional objective of this lawsuit. Examining the re-incarceration of Plaintiff while he had already been bonded out by the Court on the same charges, represents a pattern or practice of depriving citizens,

and in this case, Plaintiff, of their constitutional rights against unreasonable seizure, double jeopardy, cruel and unusual punishment, their right to effective legal representation, and abuse of process are additional objectives of this lawsuit.

## II.    JURISDICTION AND VENUE

5. Plaintiff restates and re-alleges and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

6. Jurisdiction over the claims of the Plaintiff is conferred on this Court by 28 U.S.C. § § 1331, 1343 (3) and (4). Jurisdiction over the state law claims is conferred by 28 U.S.C. §1367.

7. Venue properly lies in the Northern District of Ohio pursuant to 28 U.S.C. § 1391(a), as the events or omissions giving rise to this action occurred in this district and as such, Defendants are subject to personal jurisdiction in this district.

## III.    PARTIES

8. Plaintiff Marvin Robinson ("Plaintiff") is an African American male who was initially arrested on or about June 5, 2021, on two charges, and held in the County Jail. Even though arraigned and was granted bond by the Cuyahoga County Common Pleas Court on June 20, 2021 (two weeks after his arrest), Plaintiff remained incarcerated in the County Jail until August 23, 2021, when he was taken to MetroHealth's main campus in a coma. Plaintiff only has one kidney and suffers from significant mental health issues. He was released from MetroHealth to his parents' custody on November 1, 2021.

9.  Defendant Cuyahoga County is a unit of local government organized under the laws of the State of Ohio. Cuyahoga County is a "person" under 42 U.S.C. § 1983, and, at all times relevant to this case, acted under the color of law. Cuyahoga County is a final policymaker. Cuyahoga County, its agents, representatives, and successors have a fiduciary duty to the incarcerated public, and to the citizens of Cuyahoga County, while acting pursuant to the dictates of its Chief Executive, Armond Budish.

10. Defendant Armond Budish ("Budish") is the present Cuyahoga County Executive. At all times relevant to the allegations in this Complaint, Budish was acting in his official capacity. As the present Cuyahoga County Executive, he was at all times, acting under the color of law. He is a "person" under 42 U.S.C. § 1983. As a final policymaker, Budish is responsible for policies, practices, customs habits, and procedures of the County Jail. He is sued in his official capacity.

11. Defendant Cuyahoga County Sheriff's Office ("Sheriff's Office") is the political subdivision of Cuyahoga County whose responsibilities include the operation of the County Jail including but not limited to, the creation, implementation and adherence to Jail and State policies and procedures, the training, supervision, and discipline of the County Jail staff, and the provision of appropriate and adequate medical care to the inmates. Cuyahoga County Sheriff's Office is sued in its official capacity.

12. Defendant Christopher Paul Viland ("Viland") was appointed Sheriff of Cuyahoga County by Defendant Budish and, at all times relevant herein, his responsibilities included the operation of the County Jail, including but not limited to, the creation, implementation and adherence to County Jail and State policies and procedures, the

training, supervision, and discipline of the County Jail staff, and the provision of appropriate and adequate medical care to the inmates. As an employee of Cuyahoga County, he is sued in his official capacity. He is also sued in his personal capacity. Viland is a "person" under U.S.C. § 1983 and at all times relevant to this case acted under the color of law. Viland is a final policymaker.

13. Defendants John Does and Janes Does employees, agents, and/or representatives of the Cuyahoga County Sheriff's Office ("Sheriff's Employees), were at all times relevant herein, employees, agents, or contractors for the County Jail where the actions and conduct which form the basis of this action occurred.

14. Defendant Michelle Henry ("Henry") was at all times relevant herein the Warden of the County Jail. This Defendant was at all times herein the County Jail supervisor who had supervisory authority over the County Jail documents, operations, staff, and inmates. As an employee of Cuyahoga County, this Defendant is sued in her official capacity. She is also sued in her individual capacity. Henry is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. Henry is a final policymaker.

15. Defendant MetroHealth System was, at all times relevant herein, an Ohio corporation contracting with Cuyahoga County to provide medical services to the inmates of the County Jail, and in this role was charged to develop and implement policies and procedures and to train County Jail and medical staff on those policies and procedures to ensure the appropriate and adequate medical care of those in the custody of the County, specifically those incarcerated at the County Jail.

16. Defendants John Does and Janes Does employees, agents, and/or representatives of the MetroHealth System were at all times relevant herein, corporations, individuals, subsidiaries, predecessors, successors, agents, or other persons or business entities contracting with Cuyahoga County to provide medical services to the inmates of the County Jail, to develop and implement policies and procedures, and to train County Jail and medical staff on those procedures, to ensure the appropriate and adequate medical care of those in the Custody of the County, specifically those incarcerated at the County Jail

17. Each Defendant knew, or should have known, of the substantial and obvious risk of serious harm which could result from the denial of the necessary medical treatment to the Plaintiff, did intentionally and/or recklessly disregard said risk, and is liable in both their official and/or their official and individual capacity.

18. The policies, and failure to adhere to them, and/or customs and practices at the County Jail were the moving force and cause of the injuries suffered by the Plaintiff. Plaintiff's injuries include going into a coma for a week due to acute kidney failure, uremic encephalopathy, having his two fingers crushed by a guard, having prompt and immediate medical treatment ignored or denied, and then causing the subsequent amputation of two of Plaintiff's fingers

19. The conduct of the Defendants constituted a deprivation of a rights secured by the Constitution or laws of the United States.

20. The damages complained of herein were caused by person(s) acting under the color of state law and thus violated 42 U.S.C. § 1983.

## IV.    FACTS

21. Between June 5 and June 20, 2021, Plaintiff, was incarcerated in the County jail, awaiting arraignment. During this several week pre-arraignment incarceration, Plaintiff was under the custody and control of the County Jail officials with whom he had multiple encounters. At least three reports were issued by the police during his pre-arraignment incarceration, describing Plaintiff as a person in the middle of a mental health crisis. The third report describes Robinson carrying on full conversations with himself while waiting for a psychiatric evaluation.[1]  No medical intervention occurred to assess and address Plaintiff's condition.

22. On or about June 5, 2021, the Plaintiff had been arrested in Cleveland, Ohio for allegedly breaking and entering the premises of a family member.

23. Plaintiff was transferred to and incarcerated inside the County Jail.

24. At the time of his arrest, the Plaintiff was suffering from untreated schizophrenia, a mental health issue, along with anxiety, and related mental health issues.

25. Due to his mental health issues, Plaintiff's medications needed to be controlled but were not controlled by the County Jail employees.

26. Plaintiff was arraigned on June 20 where the Court ordered a personal bond in the amount of $5,000.00 which was waived and thereby allowed his release on his personal recognizance.  No mention of his mental health is on the arraignment record.

---

[1] See NPR Ideastream's September 24, 2021, report titled "Detainees in Cuyahoga County Jail Say Serious Problems Persist" which mentioned the Plaintiff's hospitalization from the jail.  A written copy of the report is attached to this Complaint as Exhibit A

27. Subsequent to his June 20, 2021, arraignment, Plaintiff was not released but instead was reincarcerated on the same breaking and entering case for which he had already posted a bond.  He was then held continuously in the County Jail, without bond hearing, arraignment, legal counsel, or proper care while incarcerated.  This ongoing incarceration occurred with respect to charges on which Plaintiff had already been arraigned, posted bond, and been "released".

28. Plaintiff was transferred to and incarcerated inside the County Jail. He was subsequently transported to MetroHealth while in a coma on August 23, 2021.

29. Most likely as a direct result of Plaintiff's untreated schizophrenia, which was not properly assessed and treated by the County Jail employees, on August 1, 2021, Plaintiff was taken to a secluded isolation cell inside the County Jail.

30. While in the secluded isolation cell, Plaintiff was given different medications than the medications he had been prescribed and his ingestion of the medications and his mental health condition were not properly monitored by the County Jail employees, including the physician in charge, Doctor Baskin, who administered different medication to Plaintiff

31. After taking the pink pill prescribed to him by Doctor Baskin, things became blurry to Plaintiff, all of this occurred while he was held in a secluded isolation cell.

32. While in isolation, Plaintiff had no water to drink in his cell other than from what he was provided during feeding, and he was provided no water by the County Jail staff. Plaintiff has only one kidney and needs regular hydration.

33. The water in Plaintiff's cell was shut-off.

34. While being held in the secluded insolation cell with no running water, Plaintiff's index and middle fingers were crushed by the slamming of the door slot opening of the isolation cell door by the on-duty officer during a feeding exchange.  While reaching for his food, Plaintiff was repeatedly asking why he was still being held in the County Jail, and why he was not being returned to general population in the County Jail. Plaintiff was trying to gain attention for his mistreatment and ongoing incarceration.

35. As Plaintiff was reaching for his food, the on-duty officer in charge of serving the food to inmates in secluded cells slammed the door slot on Plaintiff's hand, severely injuring, indeed crushing, Plaintiff's index and middle fingers.

36. Plaintiff's index and middle fingers were immediately deformed, black, and bleeding profusely.

37. Despite calling out in pain for help, Plaintiff was left bleeding without medical care, food, or water for two to three days after the smashing of his index and middle fingers.

38. Plaintiff's injury and the lack of medical treatment, food, or water for several days after the injury, caused Plaintiff to pass out and go into a coma from profuse bleeding and dehydration.

39. On or about August 23, 2021, Plaintiff was taken to MetroHealth's ICU with acute kidney failure, uremic encephalopathy, and severe wounds to his fingers.

40. Plaintiff was in a coma for about an entire week due to the cruel and inhumane treatment he received at the Jail.

41. While at MetroHealth, during the period he was in a coma and subsequent thereto, Plaintiff was strapped to a bed without appropriate hygienic care.

42. Plaintiff was hooked to an IV for feeding and hydration, but his crushed index and middle fingers were not given proper care.

43. While Plaintiff was being held at MetroHealth, Plaintiff's mother and other family members were searching for his whereabouts. They were not provided any information by the County Jail as to his whereabouts. Sheriff Viland himself, visited Plaintiff at MetroHealth, on August 29, 2021.

44. Plaintiff's family were finally able to locate him in early September after his mother called MetroHealth more than two weeks after his transfer there.

45. After Plaintiff left the Intensive Care Unit ("ICU") at MetroHealth, he was discharged to MetroHealth's Mental Health Pod on the 6th floor where he was put into a room (in isolation) and monitored.

46. MetroHealth failed to provide Plaintiff with the appropriate or adequate treatment for his crushed fingers. MetroHealth only provided Plaintiff with Mental Health treatments after his discharge from the ICU.

47. After 27 days in the MetroHealth Mental Health Pod, Plaintiff, on October 6, 2021, was discharged to North Coast Behavioral Healthcare in Northfield, Ohio ("NorthCoast") to get an evaluation. Plaintiff was held there an additional 20 days.

48. On November 1, 2021, Plaintiff was finally released to his parents.

49. Plaintiff had ongoing medical treatment for his crushed fingers after his release and discharge from MetroHealth and NorthCoast.

50. However, due to the improper care Plaintiff received from the County Jail staff and MetroHealth staff at the hospital, Plaintiff's index and middle fingers were amputated down to the second knuckles at MetroHealth on April 13, 2022.

51. Since Plaintiff was released, MetroHealth and Cuyahoga County Jail management have engaged in deliberate cover-ups of Plaintiff's re-incarceration and of the conditions that resulted in the amputation of Plaintiff's fingers, his going into a coma for a week, and his lack of access to running water in his secluded isolation cell.

## V.    CAUSES OF ACTION

### COUNT I

### NEGLIGENCE
### (CUYAHOGA COUNTY, BUDISH, CUYAHOGA COUNTY SHERIFF'S OFFICE, VILAND, AND HENRY).

52. Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

53. On or about June 5, 2021, Plaintiff, Marvin Robinson was detained, arrested, incarcerated in the County Jail.  Plaintiff was indicted on one charge of Burglary, O.R.C. § 2911.12, on June 23, 2021, in case CR-21-660589, for which he was arraigned on June 28, 2021, posted bond of $5000, and was granted Court ordered release with no victim contact.

54. After his arraignment on June 28, 2021, where he posted bond and was ordered released, Plaintiff, Marvin Robinson was again detained, and was re-incarcerated in the County Jail on the same charge for which he had already posted bond and been ordered released. Plaintiff was held in the County Jail under the exclusive direction and control

of Cuyahoga County, Armond Budish, County Executive, Christopher Viland, Sheriff of Cuyahoga County, the Cuyahoga County Sheriff's Office, John Does and Jane Does employees, agents, and/or representatives of the Cuyahoga County Sheriff's Office, Michelle Henry, Warden of Cuyahoga County Corrections Center, and John Does and Jane Does, agents, and/or representatives of the Cuyahoga County Warden's Office (the "County Defendants"), and each of them. Plaintiff was held from the time of his re-incarceration on June 28, 2021, pending trial under Case No. CR-21-660598-A. The State terminated charges in the other case, CR-21-660589 and the former case was dismissed on July 15, 2021. This case, dating from the same June 5, 2021, incident originated as a Cleveland Municipal case and was bound over to the County on June 17, 2021.  In the continuing Case No. CR-21-660598, the Plaintiff herein pled guilty to Burglary and was sentenced to two years of Community Control under the Supervision of the Adult Probation Department's Mental Health/Developmental Disabilities Unit on May 4, 2022.

55. During the term of his incarceration by the County Defendants, and each of them, while within their exclusive custody and control, Plaintiff Marvin Robinson suffered certain serious physical  injuries, suffered cruel and usual punishment, and suffered physical and mental trauma, all as a direct and proximate result of the County Defendants' negligence, recklessness, deliberate malfeasance, misfeasance, or nonfeasance, , which failures include but are not limited to the substandard, reckless, and/or negligent care and treatment provided by the County Defendants, and each of them, in the County Jail, as operated by the Cuyahoga County Sheriff's Office and the

Cuyahoga County Warden's Office, and as funded by Cuyahoga County, Ohio. Defendants' failures include but are not limited to negligently maintaining the County Jail, negligently exposing Plaintiff to such conditions within the County Jail as to cause him to experience the crushing of his index and middle fingers which were subsequently amputated, the total deprivation of proper hydration which led to Plaintiff's acute kidney failure, which failures collectively left Plaintiff in coma for a week after he was discovered lying unconscious in his isolation cell.

56. The County Defendants, and each of them, owed a duty and obligation to Plaintiff to operate the County Jail and the Sheriff's Office in such a manner as to be free from carelessness, negligence and/or recklessness, and/or neglect of duty, during the term of Plaintiff's incarceration, and with a duty to exercise all due care for Plaintiff. The County Defendants, and each of them, failed in their duties and obligations thereunder. The County Defendants, and each of them, having carelessly, negligently, and/or recklessly, through neglect of duty and/or with negligent indifference or disregard of their duty, failed to adequately maintain the County Jail during the period of Plaintiff's incarceration. While Plaintiff was within their exclusive custody and control, the County Defendants directly and proximately caused Plaintiff to suffer extended, unwarranted, and illegal incarceration, permanent and debilitating mental and physical injuries, including but not limited to loss of two fingers on his right hand, disfigurement, permanent nerve damage, damage to his only kidney, close to a week in a coma, continuing pain and suffering, and worsening of his debilitated state of mental health.

57. As a direct and proximate result of the County Defendants' carelessness, negligence, recklessness, misfeasance, nonfeasance, or malfeasance, and/or lack of due care, Plaintiff was made to experience certain immediate, significant, and debilitating mental, physical, and other injuries and traumas requiring medical care and services, which medical care was deliberately or recklessly and completely denied to Plaintiff for several days. As a direct result of Defendants' carelessness, negligence, recklessness, and lack of due care, Plaintiff regularly continues to receive medical care and services, and will need to receive future medical care and services and suffers from permanent physical nerve damage and loss of use for his index and middle fingers on his right hand. The trauma and physical and mental abuse have worsened Plaintiff's mental illness and substantially increased his anxiety.

58. As a direct and proximate result of the carelessness, negligence, recklessness, and/or deprivation of due care of the County Defendants, and each of them, Plaintiff sustained excruciatingly painful and permanent physical injuries resulting in certain significant medical and other expenses thereby into the future.

59. As a direct and proximate result of the carelessness, negligence, recklessness, and/or deprivation of due care of the County Defendants, and each of them, Plaintiff will continue to incur medical and other expenses into the indefinite future, a future where certain of Plaintiff's physical injuries are permanent in nature.

## COUNT II

**42 U.S.C. § 1983**
**(CUYAHOGA COUNTY, BUDISH, CUYAHOGA COUNTY**
**SHERIFF'S OFFICE, VILAND, AND HENRY.)**

60. Plaintiff restates and re-alleges and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

61. Under 42 U.S.C. § 1983, every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

62. Each Defendant identified herein, has, under color of law, deprived Plaintiff of clearly established rights, privileges, and immunities secured by the Constitution.

63. Plaintiff, after waiting two weeks to be arraigned, pleading not guilty, having bond set, and then being released on his personal recognizance, was never released from custody, and was instead re-incarcerated in the County Jail.

64. Plaintiff was illegally and unconstitutionally held in the County Jail for a subsequent five (5) week period without any consultation with a lawyer including his public defender and without any other visitation or outside friend or family contact.

65. Plaintiff was cruelly and unusually incarcerated, deprived of proper medical treatment, and removed from general population and held in solitary confinement for most of this five-week reincarceration period.

66. The Defendants, and each of them, owed a duty and obligation to Plaintiff to operate the County Jail and Cuyahoga County Sheriff's Office in such a manner as to be free

from carelessness, negligence and/or recklessness, and/or neglect of duty, in reincarcerating Plaintiff, when he had been arraigned and released on bail.

67. The County Defendants, and each of them, have failed in their duties and obligations to Plaintiff, and, have carelessly, negligently, and/or recklessly, through neglect of duty and/or with negligent indifference or disregard, failed to adequately maintain or oversee the County Jail during the period of Plaintiff's incarceration, causing Plaintiff to undergo ongoing incarceration under color of law with no legal or justificalbe basis for Plaintiff's incarceration.

68. As a direct and proximate result of the County Defendants' carelessness, negligence, recklessness, malfeasance, misfeasance, and/or lack of due care, Plaintiff was made to suffer complete and total deprivation of all of his civil rights, including his rights of consortium with other human beings, friends, and family, his right to representation by competent legal counsel, his right to free speech, his right to be free from unreasonable search and seizure while incarcerated, his right to be free from double jeopardy for the same crime(s), his right to a speedy and public trial, all to the detriment of Plaintiff's freedom, his health, and his constitutional rights as a citizen.

69. As a direct and proximate result of the actions of the County Defendants, and each of them, through the deprivation of Plaintiff's rights, privileges, and/or immunities as secured by the United States Constitution and such other laws, Plaintiff will continue to suffer severe anxiety, post-traumatic stress syndrome, and other related health and wellness issues for the rest of his life.

**COUNT III**

## 42 U.S.C. § 1983
## (CUYAHOGA COUNTY, BUDISH, CUYAHOGA COUNTY
## SHERIFF'S OFFICE, VILAND, AND HENRY.)

70. Plaintiff restates and re-alleges and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

71. Under 42 U.S.C. § 1983, every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

72. Each Defendant identified herein, has, under color of law, deprived Plaintiff of clearly established rights, privileges, and immunities secured by the Constitution.

73. Plaintiff Marvin Robinson suffered certain serious physical injuries as a direct and proximate result of the County Defendants' carelessness, recklessness, and/or negligence, during the term of his incarceration which was within their exclusive custody and control. Their unconstitutional conduct includes but is not limited to the careless, reckless, and/or negligent care and treatment provided by the County Defendants, and each of them, in the County Jail, as operated by the Cuyahoga County Sheriff's and Warden's Offices, and as funded by Cuyahoga County, Ohio, and including but not limited to carelessly, recklessly, and/or negligently maintaining and/or carelessly, recklessly, and or negligently exposing Plaintiff to such conditions within the County Jail as to cause him to suffer from acute kidney failure which left

him in a coma for close to a week with serious debilitating injuries to his hand including the amputation of his index and middle fingers.

74. While still incarcerated by the County Defendants, and each of them, and within their exclusive custody and control, Plaintiff was required to undergo certain medical treatments, including medical intervention, in an effort to save his fingers from getting amputated after they were crushed by a jail guard, after which traumatic event, his condition was ignored for several days resulting in excruciating pain, periods of incapacitation, amputation, permanent disfigurement, and scarring.

75. While still incarcerated by the County Defendants, and each of them, and within their exclusive custody and control, Plaintiff was required to undergo certain medical treatments, including medical intervention, in an effort to save Plaintiff from acute kidney failure, which resulted in excruciating pain, periods of incapacitation, permanent disfigurement, and scarring.

76. The Defendants, and each of them, owed a duty and obligation to Plaintiff to operate the County Jail and Cuyahoga County Sheriff's Office in such a manner as to be free from carelessness, negligence and/or recklessness, and/or neglect of duty, during the term of Plaintiff's incarceration, and with a duty to exercise all due care for Plaintiff.

77. The County Defendants, and each of them, have failed in their duties and obligations to Plaintiff, and, have carelessly, negligently, and/or recklessly, through neglect of duty and/or with negligent indifference or disregard, failed to adequately maintain or oversee the County Jail during the period of Plaintiff's incarceration, while Plaintiff was within their exclusive custody and control, directly and proximately caused Plaintiff to

suffer permanent and debilitating injuries, including but not limited to being in a coma for a week due to acute kidney failure, the crushing of his fingers, and the subsequent amputation of his fingers, and continuing pain and suffering.

78. As a direct and proximate result of the County Defendants' carelessness, negligence, recklessness, and/or lack of due care, Plaintiff was made to suffer certain immediate, significant, and debilitating physical and other injuries requiring medical care and services, and future medical care and services, and permanent physical disfigurement, which care, and services were cruelly and unreasonably withheld for several days.

79. As a direct and proximate result of the carelessness, negligence, recklessness, and/or lack of due care of the County Defendants, and each of them, Plaintiff sustained excruciatingly painful and permanent personal physical injuries, resulting in significant financial losses, pain, disfigurement and physical and mental trauma, which will cause Plaintiff to incur certain ongoing medical and other expenses into the foreseeable future.

80. On or after November 1, 2018, the United States Marshal's Service, Prisoner Operations Division published its Quality Assurance report regarding its Facility Review of the Cuyahoga County Correctional Center (the "Facility Review"), a copy of which is attached hereto and incorporated herein and hereby as Exhibit A to Plaintiff's Complaint.

81. The Facility Review was widely published, disseminated, and reviewed by media outlets, bringing to light those operational and personnel deficiencies within the Cuyahoga County Correctional Center, under the direct control of the County Defendants, that

found, among the multiple deficiencies and issues, that "Non-compliances with the [Federal Performance-Based Detention Standards] were identified in all functional areas [of the Cuyahoga County Correctional Center]. Administration and Management, Food Services, Restrictive Housing and Safety and Sanitation were determined to be 'Unsatisfactory/At-Risk', Security and Control and Health Care are 'Marginal'…", that the performance of this function is so defective or deficient, it actually presents a risk to the safety of staff and detainees [and that] the risk include life and safety concerns as well as inhumane conditions or confinement, which violate safe, secure, humane conditions and/or violate detainee/inmate constitutional rights," and that "not one of the identified 119 deficiencies or non-compliance findings since [the previous] 2015 [voluntary pre-PREA Audit] has been corrected."

82. The Cuyahoga County Sheriff maintains and sets forth its Mission Statement, stipulating, admitting, and conceding that, among other items, that as "agents of the community, we strive to provide appropriate custodial care along with programs that support the physical, spiritual, and constitutional needs of individuals committed to our custody. Further, every effort will be made to assist inmates in our custody to understand and take responsibility for their involvement in the justice system." See the Cuyahoga County, Agency of Inspector General, Report of Investigation 18-0050-I, page 2 of 14, dated December 31, 2018, amended January 8, 2019, attached hereto and incorporated herein and hereby as Exhibit B to Plaintiff's Complaint.

83. The actions of the County Defendants, and each of them, and under the color of any and all relevant and applicable statutes, ordinances, regulations, customs, or usages of

the County of Cuyahoga, including those demonstrated by Exhibits A and B to this Complaint, the State of Ohio, and/or the United States of America, the County Defendants, and each of them, subjected, or caused to be subjected, Plaintiff to the deprivation of his rights, privileges, and/or immunities as secured by the United States Constitution and such other laws as set forth above, herein, and hereunder, and that the County Defendants, and each of them, are liable to Plaintiff under the provisions of 42 U.S.C. § 1983 for his injuries so suffered and endured, in and for his redress as against the County Defendants, and each of them.

84. As a direct and proximate result of the actions of the County Defendants, and each of them, through the deprivation of Plaintiff's rights, privileges, and/or immunities as secured by the United States Constitution and such other laws, Plaintiff will continue to incur medical and other expenses into the indefinite future, and Plaintiff will suffer significant losses, pain, and trauma into the indefinite future, and certain of Plaintiff's physical injuries are permanent in nature.

## COUNT IV

### NEGLIGENCE
### (METROHEALTH DEFENDANTS)

85. Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

86. To Plaintiff's belief and understanding, during his term of incarceration by the County Defendants, certain services may have been provided to Plaintiff either directly by Defendant, the MetroHealth System, and/or and John Does and Jane Does employees,

agents, and/or representatives of the MetroHealth System (the "MetroHealth Defendants"), or through an agreement, contract, or arrangement with and through the County Defendants.

87. The MetroHealth Defendants were aware of Plaintiff's mental health conditions based on the multiple times Plaintiff was incarcerated in the County Jail.

88. The MetroHealth Defendants were also aware of the injuries to Plaintiff's index and middle fingers that he sustained while he was incarcerated at the County Jail.

89. Despite the debilitated mental and physical conditions of Plaintiff, the MetroHealth Defendants failed to administer proper and adequate medical care.

90. Plaintiff received professional medical services from the County Defendants, and the MetroHealth Defendants, and/or each and any of them, from and after June 20, 2021, through and including November 1, 2021, by virtue of their operating health care facilities located in Cuyahoga County, Ohio, and holding themselves out to the public, including Plaintiff, as having the requisite skilled personnel, staff, and equipment to render quality health care services to the public, including Plaintiff.

91. In providing such professional medical services, the County Defendants and/or the MetroHealth Defendants, and/or each and any of them, from and after June 20, 2021, jointly and severally, were reckless, careless, and/or negligent in their care and treatment of Plaintiff.

92. That as a direct and proximate result of the negligence of the County Defendants and/or the MetroHealth Defendants, and/or each and any of them, Plaintiff suffered cruel and usual, even inhumane punishment, causing him serious injuries and damages

which are permanent in nature, and he has incurred substantial medical expenses, and is continuing to incur substantial medical expenses, has incurred pain and suffering, and has suffered and will continue to suffer the loss of enjoyment of the usual activities of life, both past and future.

93. Plaintiff does not have knowledge of the true names, addresses, and capacities of the Defendants named herein as John Does and Jane Does employees, agents, and/or representatives of the MetroHealth System, and/or John Does and Jane Does employees, agents, and/or representatives of the Cuyahoga County Sheriff's Office, and/or John Does and Jane Does employees, agents, and/or representatives of the Cuyahoga County Warden's Office, and therefore names these Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when the same are ascertained. Upon information and belief, each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, as Plaintiff's damages as herein alleged were proximately caused by their reckless, careless, or negligent conduct, making them both jointly and severally liable with respect to Defendants named herein.

WHEREFORE, Plaintiff prays that this Court enter the following judgment against the Defendants, jointly and severally, in an amount in excess of $75,000.00 on each count of the Complaint for compensatory damages, as well as punitive damages, and legal fees where appropriate, including but not limited to the following:

      A. Award Plaintiff compensatory and consequential damages in an amount to be determined at trial;

B.  Award punitive damages against the individuals and corporate Defendants in an amount to be determined at trial;

C.  Grant injunctive relief including, but not limited to, that the County and the Sheriff be under Order of the Court to promulgate, adopt, train, maintain, and enforce policies to prevent any future unconstitutional incarceration and/or post incarceration conduct as described herein or as the Court deems necessary;

D.  Award Plaintiff attorney fees, pre and/or post judgment interest and costs;

E.  Such other relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiff demands a jury of the maximum amount of jurors allowed by law.

Respectfully submitted,

Isaac Tom Monah, Esq. (OH 0098789)
Michael Shaut, Esq. (OH 0014900)
*Attorneys for Plaintiff*
Michael Shaut Law Office, LPA
20600 Chagrin Blvd. Ste 470
Shaker Hts., OH 44122
216-471-8489/Fax 216-752-0042
tom@shautlaw.com.