IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **MARVIN ROBINSON,** | ) | CASE NO. 1:22-cv-0961 |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | JUDGE DAN AARON POLSTER |
| v. | ) | |
| | ) | |
| **CUYAHOGA COUNTY, OHIO,** *et al.*, | ) | <u>OPINION & ORDER</u> |
| | ) | |
| **Defendants.** | ) | |

**I.     Introduction**

On September 28, 2022, Defendant Cuyahoga County filed a partial motion to dismiss. ECF Doc. 20. Cuyahoga County moves for dismissal of Count II of Plaintiff's Amended Complaint, which states a claim for violation of the Americans with Disabilities Act ("ADA") and § 504 of the 1973 Rehabilitation Act ("RA"). Defendant has also moved to dismiss Plaintiff's demands for punitive damages and attorneys' fees. Plaintiff filed an opposition to the motion to dismiss on October 21, 2022. ECF Doc. 24. Plaintiff has abandoned his demand for punitive damages against Cuyahoga County, but argues his Count II claim should not be dismissed. Cuyahoga County filed a reply on November 4, 2023. ECF Doc. 28. After making all inferences in favor of Plaintiff, the Court finds he has plausibly set forth enough facts to state a claim for relief under the ADA and RA. For this reason, the Court **DENIES** Defendant Cuyahoga County's motion to dismiss Count II.

**II.    Background**

This case involves multiple claims arising from the alleged mistreatment of Plaintiff Marvin Robinson while he was in Cuyahoga County's custody. Plaintiff is a twenty-seven-year-old man with a history of mental health issues, including a diagnosis of schizophrenia. ECF Doc.

1

18 at ¶1. Cuyahoga County Corrections Center ("CCCC")[1] was holding Plaintiff as a pre-trial detainee from June 14, 2021 to August 23, 2021. *Id*. On July 6, Plaintiff was transferred to a secluded isolation cell inside of the CCCC's mental health Pod.[2] *Id*. at ¶26. On August 23, he was transported to the Medical Intensive Care Unit at MetroHealth. *Id*. at ¶43-6. On September 15, he was discharged to North Coast Behavioral Healthcare ("North Coast"), and then released to the custody of his parents on November 1, 2021.[3] *Id*. at ¶¶45, 62,63.

While in custody, multiple medical staff visited Plaintiff. See *Id*. at ¶¶32-40. However, starting on August 9, Plaintiff refused to take his medication and started exhibiting aggressive behavior. *Id*. at ¶27. Plaintiff alleges that, after an inmate refuses medication twice consecutively, CCCC's medical staff are required to monitor and evaluate the inmate's health. *Id*. Despite this requirement, Plaintiff contends no medical staff entered his cell to conduct a routine assessment from August 14 to August 23. *Id*. at ¶42. Plaintiff represents he injured his hand on August 15, but Defendant's staff failed to provide any medical assistance. *Id*. at ¶¶54-56. Thus, Plaintiff's injuries were left untreated for the next eight days. *Id*. at ¶54. Because his hand injury was not timely treated, two of Plaintiff's fingers became necrotic and required amputation. *Id*. at ¶¶ 47, 64. Also, from August 13, 2021 to August 22, 2021, Plaintiff's isolation cell did not have any water. *Id*. at ¶52.

Plaintiff stayed in the isolation cell until August 23, 2021 when Dr. Cohen assessed Plaintiff and found he suffered from severe dehydration, significant weight loss and confusion with lethargy. *Id*. at ¶43. Plaintiff was transferred to the Intensive Care Unit at MetroHealth. *Id*. at ¶45. There, Plaintiff refused food and water for approximately 2-3 days. *Id*. MetroHealth's staff

---

[1] Defendant Cuyahoga County is responsible for CCCC compliance with federal and state law. *Id*. at ¶8-10.
[2] Plaintiff's cell 3T was located in Pod 7D of the facility.
[3] Plaintiff was charged for burglary and the personal bond was set at $10,000.00 with GPS monitoring.

noted Plaintiff was severely dehydrated and suffering from acute kidney failure caused by dehydration. *Id*. at ¶57. Plaintiff remained at MetroHealth until September 15, 2021.

On June 6, 2021, Plaintiff filed a complaint against Cuyahoga County, MetroHealth and other Defendants. ECF Doc. 1. Plaintiff filed an Amended Complaint on September 15, 2022, to include claims against individual employees of Cuyahoga County and MetroHealth. ECF Doc. 18. Plaintiff has asserted nine claims against Defendants.

### III. Law and Analysis

#### A. Standard of Review

In reviewing a motion to dismiss for failure to state a claim, a district court must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the non-moving party. *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 538 (6th Cir. 2012). Under the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, to survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). The plausibility standard "asks for more than a sheer possibility that a Defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Complaints alleging "naked assertion[s]" devoid of "further factual enhancement" will not survive a motion to dismiss. *Twombly*, 550 U.S. at 557. In addition, simply reciting the elements of a cause of action or legal conclusions will not suffice. *Iqbal*, 556 U.S. at 678.

#### B. ADA and RA Claims

Congress enacted the Americans with Disabilities Act ("ADA") with the noble purpose of "providing a clear and comprehensive national mandate for the elimination of discrimination

against individuals with disabilities." 42 U.S.C. § 12101(b)(1). Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. ADA applies to both federal and state prisons. *Mingus v. Butler*, 591 F.3d 474, 482 (6th Cir. 2010). The 6th Circuit recognizes two types of claims under Title II of the ADA: (1) failure-to-accommodate claims and (2) intentional-discrimination claims. *Roell v. Hamilton County*, 870 F.3d 471, 488 (6th Cir. 2017) (citing *Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 907 (6th Cir. 2004)). A failure-to-accommodate claim asserts that the defendant "could have reasonably accommodated Plaintiff's disability but refused to do so." *McPherson v. Mich. High Sch. Athletic Ass'n*, 119 F.3d 453, 460 (6th Cir. 1997) (*en banc*). An intentional-discrimination claim asserts that Plaintiff's "disabilities were actually considered by the defendant in formulating or implementing" the harmful policies or conduct. *Id.*

The reasonable accommodation standards are set out forth in Title II's implementing regulations. *Keller v. Chippewa Cty.*, 860 F. App'x 381, 385 (6th Cir. 2021) (citing 28 C.F.R. § 35.130(b)(7)(i)). To recover on a failure-to-accommodate claim, Plaintiff must show: (1) he is disabled; (2) he was qualified to take part in the services, programs, or activities of the public entity; (3) he was excluded from participation in or denied the benefits of such services, programs, or activities; and (4) this exclusion or denial occurred by reason of his disability. 42 U.S.C. § 12132; see *Ability Ctr. of Greater Toledo*, 385 F.3d at 909-10. To state a prima facie case under the Rehabilitation Act, Plaintiff must show: (1) he is disabled; (2) he was otherwise qualified; (3) he was excluded solely by reason of his disability; and (4) the relevant program is receiving federal financial assistance. *Doe v. Salvation Army in U.S.*, 531 F.3d 355, 358 (6th Cir. 2008). Apart

from § 504's limitation to denial of benefits "solely by reason" of disability and its reach of only federally funded, as opposed to "public entities", the reach and requirements of both statutes are precisely the same. *Harrison v. City of Cleveland*, No. 1:19CV2328, 2020 U.S. Dist. LEXIS 219122, at *8 (N.D. Ohio Nov. 23, 2020) (citing *S.S. v. E. Kentucky Univ.*, 532 F.3d 445, 452-53 (6th Cir. 2008). Thus, courts frequently analyze together claims brought under the two statutes. *Douglas v. Muzzin*, No. 21-2801, 2022 U.S. App. LEXIS 21529, at *15 (6th Cir. Aug. 3, 2022).

To prove intentional disability discrimination under ADA and RA, courts apply the McDonnell Douglas burden-shifting framework. *Anderson v. City of Blue Ash*, 798 F.3d 338, 356 (6th Cir. 2015) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)). First, Plaintiff must establish that (1) he has a disability; (2) he is otherwise qualified; and (3) he was being excluded from participation in, denied the benefits of, or subjected to discrimination under the program because of his disability. *Id*. at 357. If Plaintiff makes a prima facie showing, the defendant "must then offer a legitimate, nondiscriminatory reason for its challenged action." *Id.*

**C.    Analysis**

Plaintiff's Amended Complaint does not clearly identify which type of ADA claim Plaintiff is asserting but his response suggests he is asserting a failure-to-accommodate claim for the time he was in custody. ECF Doc. 24 at p. 7. Defendant, on the other hand, argues Plaintiff has not sufficiently alleged an intentional discrimination claim under Title II of the ADA or the RA. ECF Doc. 24 at pp. 2-3; ECF Doc. 28 at p. 2.

The parties do not dispute that Plaintiff is disabled under the ADA or that he was qualified to take part in the services, programs or activities of the CCCC. He was diagnosed with schizophrenia and was placed in CCCC's mental health Pod. CCCC receives federal funds and is

covered by the mandate of §504 of the 1973 Rehabilitation Act. However, defendant argues that Plaintiff has not sufficiently alleged facts that he was excluded or denied benefits, programs or services "because of his" disability.

Defendant cites *Harrison v. City of Cleveland,* No. 1:19CV2328, 2020 U.S. Dist. LEXIS 219122 (N.D. Ohio, Nov. 23, 2020), as authority that the ADA and/or RA have no applicability to the present case. *Harrison,* 2020 U.S. Dist. at \*6-7. In *Harrison*, an inmate tragically took his own life in his cell. His estate alleged the City of Cleveland and its employees had failed to adequately screen him, document his condition, implement a suicide watch or contact appropriate medical personnel. *Id*. at \*9-10. The district court granted judgment on the pleadings of the estate's ADA and RA claims because the complaint had not alleged the inmate was denied benefits *due to* his disability. But in *Harrison,* the City of Cleveland had not even conducted mental or physical screenings to determine the inmate had a disability before he took his own life.

*Harrison* is inapposite to the facts of this case. Plaintiff's allegation does not concern failing to screen or document his condition. Plaintiff alleges he received a psychiatric evaluation and was prescribed medication two days after being taken into custody. ECF Doc. 18 at ¶30. Plaintiff was later found to be at risk of violence, uncooperative and a risk of self-harm and harm to others. *Id*. at ¶32. Because Defendant was aware of Plaintiff's mental disability, Defendant transferred Plaintiff to the isolation cell located at the mental health Pod. *Id*.

Plaintiff alleges Defendant provided various medical services until he stopped taking his medication and consequently exhibited aggressive behavior presenting a safety concern. *Id*. at ¶¶33-38. Defendant is correct that the ADA "does not create a remedy for medical malpractice." *Larson v. Eppinger*, No. 2:20-CV-4997, 2021 U.S. Dist. LEXIS 121212, 2021 WL 2659998, at \*6 (S.D. Ohio June 29, 2021) (citing *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996)). However,

this case does not involve merely "allegations of medical malpractice or disagreements about medical treatment." *Id.* (citing *Furgess*, 933 F.3d at 291). A denial of a disability accommodation that involves medical judgment does not make it an unreviewable medical determination under the ADA. *Id.* (citing *Munoz v. California Dep't of Corn & Rehab.*, 842 F. App'x 59 (9th Cir. 2021)). According to Plaintiff, Cuyahoga County was clearly aware of his disability and provided various medical services to him until he began exhibiting aggressive behavior.

The Court now turns to whether Plaintiff has sufficiently alleged he was excluded from participation in or denied the benefits of any of the CCCC's services, programs, or activities *because of* his disability. Title II only requires that covered entities provide meaningful access to their services, programs, and activities." *Keller*, 860 F. App'x at 386 (quoting *Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 909 (6th Cir. 2004)). "Meaningful access" does not mean that an accommodation must "be perfect or the one most strongly preferred by the Plaintiff." *Id.* at 387. The phrase services, programs, or activities encompasses virtually everything that a public entity does. *Johnson v. City of Saline*, 151 F.3d 564, 569 (6th Cir. 1998) (quoting 42 U.S.C. § 12132). Modern prisons provide inmates with recreational activities, medical services, and educational and vocational programs, which theoretically benefit the prisoners and any disabled prisoners could be excluded from participation. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210, 118 S. Ct. 1952, 141 L. Ed. 2d 215 (1998). Denying meaningful access to medical care, bathroom facilities, or meals could support the required prima facie showing. See *Keller* at 386 (citing *United States v. Georgia*, 546 U.S. 151, 157, 126 S. Ct. 877, 163 L. Ed. 2d 650 (2006)).

Plaintiff's Amended Complaint sufficiently alleges at least two instances where Plaintiff was denied benefits of services—denial of medical treatment for his hand injury and denial of mental health treatment. Plaintiff's complaint alleges that CCCC discontinued services because

of "safety concerns, noncompliance with his medication, and being "highly aggressive." *Id*. at ¶¶38, 41, 55. Based on the Jail Guard Logs, Defendant only provided food trays to Plaintiff during his last week at the mental health Pod. Plaintiff's allegations suggest that CCCC discontinued all medical services to Plaintiff because of his mental state, until August 23rd when Plaintiff was transported to the emergency room due to his poor health condition. ECF Doc. 18 at ¶¶43-45.

Plaintiff further asserts he received no medical attention or checkups from August 14 until August 23, 2021. ECF Doc. 18 at ¶26. Plaintiff was specifically placed at the mental health Pod due to mental health issues and his safety. *Id*. at ¶32. Defendant was aware Plaintiff had refused his medication on August 9 and continued to do so until he was transported to the emergency room on August 23, 2021. *Id*. at ¶27. Subsequently, Plaintiff started exhibiting aggressive behavior and was labeled a safety concern. *Id*. at ¶38.

Defendant argues it stopped providing medical services due to Plaintiff's behavior. But it is not unreasonable to infer that Plaintiff's behavior was a symptom of his mental disability. At this early phase of litigation Plaintiff's allegations raise an inference that his behavior could have been caused by his untreated mental disability. Because the Court is required to make all inferences in Plaintiff's favor, the Court finds it plausible that CCCC denied Plaintiff meaningful access to medical services *because of* his disability.

Defendant has only moved for partial dismissal of Plaintiff's complaint. Regardless of how the Court rules on the motion, the case will proceed forward to discovery. Some of the facts supporting Plaintiff's ADA and RA claims are the same facts supporting Plaintiff's other claims. Should Plaintiff be unable to support his ADA and RA claims with Rule 56 evidence, the Court will reconsider Defendant's arguments as to those claims in the context of Fed. R. Civ. P. 56.

Defendant also moved the Court to dismiss Plaintiff's request for punitive damages and attorney fees. Under federal law, punitive damages cannot be awarded against a political subdivision unless expressly authorized by statute. *See City of Newport v. Fact Concerts, Inc.,* 453 US 247, 260-266 (1981); *Lassen v. Lorain County,* No. 1:13: CV 1938, 2014 WL 3511010, *10 (N.D. Ohio Jul. 14, 2014). In his opposition, Plaintiff expressly abandoned his demand for punitive damages against Defendant Cuyahoga County. ECF Doc. 24. at 1. Therefore, Defendant's request to dismiss Plaintiff's claims for punitive damages is granted.

**IV. Conclusion**

For the reasons stated above, the Court finds that Plaintiff has plausibly set forth enough facts to state a claim for relief under the ADA and RA. Accordingly, the Court **DENIES** Defendant Cuyahoga County's motion to dismiss Count II of Plaintiff Amended Complaint. The Court finds that Plaintiff has abandoned his punitive damages claim against Defendant Cuyahoga County.

The Status conference scheduled for December 7, 2022 at 12:00 p.m., noon is **CONFIRMED**.

**IT IS SO ORDERED.**

Dated: November 8, 2022                              *s/Dan Aaron Polster*
                                                     United States District Judge